IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LAMAR BROWN,

      Plaintiff,

v.

PRO-SOURCE PERFORMANCE
PRODUCTS, INC.,
      Defendant.

Civil Action No. 1:22-cv-06086

**DEFENDANT PRO-SOURCE PERFORMANCE PRODUCTS, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF RULE 12(B)(1)**

**O'HAGAN MEYER LLC**

Ryan T. Benson  (Admitted *Pro Hac Vice*)
Illinois ARDC No. 6312338
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
T: 312.422.6100    F: 312.422.6110
rbenson@ohaganmeyer.com

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    INTRODUCTION ................................................................................................. 2

II.    STATEMENT OF FACTS  ................................................................................... 3

III.    LEGAL STANDARD ........................................................................................ 4

        Rule 12(b)(1) Motion to Dismiss  ................................................................. 5

IV.    ARGUMENT  ................................................................................................... 6

      A.    The Plaintiff's Claims Are Moot Because Pro-Source's Website Can Be Used By Plaintiff If He Really Wished To Use The Website ........................................ 6

      B.    Plaintiff's Request For Nominal Damages Does Not Defeat Defendant's Mootness Argument ................................................................ 10

      C.    Plaintiff Has No Actual Knowledge Of A Barrier To Access Goods Or Services From Defendant Since He Never Contacted Defendant Via Telephone or Email ................................................................ 12

      D.    Plaintiff Cannot Show An "Injury In Fact" As He Did Not Plead A Specific Product He Was Interested In Purchasing  ........................................... 16

V.    CONCLUSION ................................................................................................ 18

**POINTS AND AUTHORITIES** *(Continued)*

## POINTS AND AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ................................................................11

*Anderson v. Macy's Inc.*,
    943 F.Supp.2d 531 (W.D. Pa. 2013) ........................................11

*Bowers v. National Collegiate Athletic Ass'n*,
    346 F.3d 402 (3d Cir. 2003); 42 U.S.C.A. §12188(a) (West)  .................11

*Brief v. Albert Einstein Coll. of Med.*,
    423 F. App'x. 88 (2d Cir. 2011) ..............................................10

*Campbell v. Greisberger*,
    80 F.3d 703 (2d Cir. 1996)...........................................................6

*Castillo v. John Gore Organization, Inc.*,
    2019 WL 6033088, *5 (E.D.N.Y. Nov. 14, 2019) ........................ 14-15

*Clapper v. Amnesty Intern, USA*,
    568 U.S. 398 (2013) ................................................................16

*Clear Channel Outdoor, Inc. v. City of New York*,
    594 F.3d 94 ................................................................................6

*Diaz v. Kroger*, No. 18 Civ. 7953 (KPF),
    2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019) ................................7, 9

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013) ........................................................6, 10

*Goodwin v. C.N.J., Inc.*,
    436 F.3d 44 (1st Cir. 2006) ....................................................11

*Gorecki v. Dave & Buster's, Inc.*,
    2017 WL 6371367, at *5 (C.D. Cal. Oct. 10, 2017) ............................15

## POINTS AND AUTHORITIES *(Continued)*

*Greater New York Hospital Assoc. v. United States*,
    1999 WL 1021561, at \*4 (S.D.N.Y. Nov. 9, 1999) ....................................5

*Guglielmo v. Nebraska Furniture Mart, Inc., No.*
    19 Civ. 11197 (KPF), 2020 WL 7480619, at \*4 (S.D.N.Y. Dec. 18,
    2020)................................................................................3, 6-7, 9, 17-18

*Hillesheim v. Holiday Stationstores*, Inc.,
    953 F.3d 1059 (8th Cir. 2020) ................................................................12

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ..............................................................11

*Irish Lesbian & Gay Org. v. Giuliani*,
    143 F.3d 638 (2d Cir. 1998)......................................................................6

*Jairath v. Dyer,*
    154 F.3d 1280 n. 7 (11th Cir.1998) ........................................................11

*Jaquez v. Aqua Carpatica USA, Inc.*
    20 CV 8487 (ALC) 2021 WL 3727094, at \*6 (S.D.N.Y. Aug. 20,
    2021)................................................................................... 3, 17-18

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986).....................................................................5

*Lujan v.  Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................16

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...................................................................5, 8

*Markett v. Five Guys Enterprises LLC*,
    No. 17 Civ. 788 (KBF), 2017 WL 5054568, at \*3 (S.D.N.Y. July 21,
    2017) ......................................................................................7

*Newman v. Piggie Park Enters., Inc.,*
    390 U.S. 400 (1968) ...............................................................................10

*Poodry v. Tonawanda Band of Seneca Indians*,

**POINTS AND AUTHORITIES** *(Continued)*

85 F.3d 874, 887 n. 15 (2d Cir. 1996)...........................................................5

*Powell v. National Bd. of Medical Examiners*,
364 F.3d 79 (S.D.N.Y. April 7, 2004) ....................................................10

*Reviello v. Phila. Fed. Credit Union*,
No. 12–508, 2012 WL 2196320, at *4 (E.D.Pa. June 14, 2012) .............11
*Robinson v. Overseas Military Sales Corp.*,
21 F.3d 502(2d Cir. 1994)............................................................................5

*Smith v. Wal–Mart Stores, Inc.*,
167 F.3d 286 (6th Cir.1999) .....................................................................11

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016) ............................................................................16

*Tasini v. New York Times Co., Inc.*,
184 F.Supp.2d 350 (2d Cir. 2002) ...........................................................5

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979).................................................................................11

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)............................................................................. 11-12

*Van Wie v. Pataki*,
267 F.3d 109 (2d Cir. 2001)....................................................................8-9

*Wander v. Kaus*,
304 F.3d 856 (9th Cir. 2002) ...................................................................11

*West v. Moe's Franchisor, LLC*, 2015WL 8484567, at *3
(S.D.N.Y. Dec. 9, 2015) .........................................................................13

*Wojewski v. Rapid City Reg'l Hosp., Inc.*,
450 F.3d 338 (8th Cir. 2006) ..................................................................11

*Yandow v. Krenau*,
474 Fed. App'x. 797 (2d Cir. 2012)...........................................................6

iv

**POINTS AND AUTHORITIES** *(Continued)*

*Yusim v. United States Department of Housing and Urban Development*,
409 F.Supp.3d 125 (E.D.N.Y. Mar. 28, 2018) .........................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 2-3, 5, 14

**Codes**

42 U.S. Code § 12101 ..........................................................................2, 6-7, 10-14, 16-18

42 U.S. Code § 12188(a)(1) ............................................................................................11

28 C.F.R. § 36.303(c)(1)(ii) ...........................................................................................12

28 C.F.R. Pt. 36, App'x C................................................................................................12

**Other Authorities**

Web Content Accessibility Guidelines 2.0/2.1 ("WCAG") ....................................2-3, 8-9

Defendant, Pro-Source Performance Products, Inc. ("Pro-Source"), through its counsel, O'Hagan Meyer, LLC, hereby submits this Memorandum of Law in connection with and as support in favor of its Motion to Dismiss the Complaint ("Complaint") for Declaratory and Injunctive Relief filed by Plaintiff, Lamar Brown, filed contemporaneously herewith pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth below, Defendant's Motion must be granted.

## I.    INTRODUCTION

Plaintiff claims in his Complaint that the website www.prosource.net ("Website") is allegedly "largely incompatible with computer screen reader programs" and thus is in violation of the Americas with Disabilities Act ("ADA"). (See Complaint attached hereto as Exhibit A at ¶¶7-8). The Plaintiff seeks to obtain an injunction requiring, in part, Pro-Source to "fix" the alleged shortcomings the Plaintiff perceives with the Pro-Source's Website and be awarded attorney's fees. (Ex. A, ¶10).

As set forth in detail below, Pro-Source has made its Website accessible and usable by screen reader users remedied violations Plaintiff alleges in his Complaint which centered on issues with it blog portion of the Website. As can be shown through video evidence of a visually impaired individual using the Website, Plaintiff should be able to learn all about Pro-Source's products, contact information for Pro-Source, and order product. Pro-Source's Website is usable and is continually monitored to conform with the Web Content Accessibility Guidelines 2.0/2.1 ("WCAG") and therefore the claims raised in Plaintiff's Complaint are moot, and the Complaint must be dismissed pursuant to the Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.

Furthermore, the lawsuit should be dismissed because Plaintiff makes no allegations that he tried to contact Pro-Source's customer service to gain the information he was seeking or to order product from Pro-Source. Without reaching out to Pro-Source's customer service, Plaintiff

does not know if Pro-Source would not provide him "effective communication" in gaining the information he needed or to help facilitate him in purchasing product.  Therefore, Plaintiff's claim does not have standing and his Complaint must be dismissed pursuant to the Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.

Finally, Plaintiff does not allege one product he is interested in purchasing from Defendant and that alone is a reason to dismiss Plaintiff's Complaint based on standing.  *See Jaquez v. Aqua Carpatica USA, Inc.* 20 CV 8487 (ALC), 2021 WL 3727094, at *6 (S.D.N.Y. Aug. 20, 2021); *see also id.* citing *Guglielmo*, at 2020 WL 7480619, at *11 (Dismissing the plaintiff's complaint that he encountered barriers while attempting to access the defendant's website because he failed to identify the goods he intended to purchase on any of his visits to the website).

## II.     STATEMENT OF FACTS

Plaintiff claims that Pro-Source is an online retailer that sells protein powder, diet products, creatine and other merchandise or accessories.  (Ex. A, ¶4).  Plaintiff alleges that he attempted to access the Website from this District.  (*Id.* at ¶23).  Plaintiff alleges he was unable to understand the content of the Website because it was not compatible with screen reader programs. (*Id.*). Plaintiff does not allege when he actually visited the Website.

Importantly, as outlined by Robert Chinery, who is a Website Developer for Pro-Source, Pro-Source has remedied the alleged infirmities with its Website and has completed all necessary improvements to make the Website accessible to the visually impaired. (Declaration of Robert Chinery, attached as Exhibit B, at ¶¶5-12). Prior to the inception of this lawsuit, Pro-Source had undertaken steps to try to comply with the Website Content Accessibility Guidelines 2.0/2.1 standards ("WCAG"). (Ex. B, ¶5).

In May of 2022 and on August 31, 2022, Pro-Source did a review of the Website with a totally blind screen reader user named Robert Kingett. (See Declaration of Robert Kingett, attached as Exhibit C, at ¶¶ 7-7; see also Ex. 1 to Ex. C[1]). During the May 2022 and August 31, 2022 review, Mr. Kingett could learn about Pro-Source's business, products, accessibility statement, contact information, pricing information, his screen reader could read the links for sub-menus on the homepage so he could browse various categories of interest, his screen reader described the images on the Website, he was immediately taken to a shopping cart after adding an item, his screen reader read the links found for promotional advertisements, pricing information on products, product descriptions of individual products, reviewing articles on the website and he was able to go through the steps of ordering a pair of workout gloves. (Ex. C, ¶6). Mr. Kingett had no issues using his screen reader to find information on the Website and stated that a visually impaired individual should be able to use the Website if they know how to use a screen reader. (See Ex. C, ¶¶5-9, see also August 31, 2022 review attached as Ex. 1 to Ex. C).

There is no reason for Pro-Source to undo the changes that have been made to the Website. Indeed, Pro-Source is committed to continuing to keep its Website up to date and compliant with all applicable standards to make the Website as accessible to all as possible. (Ex. B, ¶14).

Pro-Source further does not intend to let its Website fall behind the current standards because of its commitment to being accessible to as many of its patrons, and as much of the public, as possible, and will continue to keep the Website up to date with any new standards because it does not wish to be involved in any further unnecessary litigation. (Ex. B, ¶15).

## III.    LEGAL STANDARD

---

[1] Defendant filed a Motion to Submit the Video Evidence With the Court on August 29, 2022 (ECF #9). As of the date of filing this Memorandum that Motion has not been ruled on. If the Motion is granted, Defendant will send a copy of the video to Court.

**Rule 12(b)(1) Motion to Dismiss**

The court properly dismisses a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The burden is on the plaintiff asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction is proper. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Attacks on the subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may come in two forms. "A *facial* challenge contests the sufficiency of the pleadings." *Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 353 (2d Cir. 2002) (emphasis in original) (internal citations omitted); *see also Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n. 15 (2d Cir. 1996) (a *facial* attack challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves.") (emphasis in original) (internal citations and quotes omitted). "A *factual* attack, by contrast, 'challenges whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff's claims'." *Id.* citing *Greater New York Hospital Assoc. v. United States*, 1999 WL 1021561, at *4 (S.D.N.Y. Nov. 9, 1999). "While a court must accept as true all material allegations of the complaint in a *facial* attack, in a *factual* challenge, by contrast, no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Id.* (internal citations omitted). The attack in this case is factual.

Since a factual jurisdictional challenge is involved, the court is permitted to refer to extrinsic evidence to the pleadings. *Id.* citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Greater New York Hospital Assoc.*, 1999 WL 1021561, at *4 ("[i]n

reviewing a *factual* challenge to subject matter jurisdiction, the court may rely on the plaintiff's complaint, as well as look to extrinsic evidence.") (emphasis in original).

### IV.    ARGUMENT

### A.    The Plaintiff's Claims Are Moot Because Pro-Source's Website Can Be Used By Plaintiff If He Really Wished To Use The Website

The existence, at all stages of litigation, of an actual case or controversy is a requirement under the United States Constitution for a federal court to exercise subject matter jurisdiction over a defendant. Indeed, it has been long held that "an actual controversy must be extant at all stages of review, not merely at the time that the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). Further, "the mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies." *Yandow v. Krenau,* 474 Fed. App'x. 797, 799 (2d Cir. 2012) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998).

However, there is an exception to the application of mootness. Specifically, "[a] request for injunctive relief such that sought by a Plaintiff under the ADA, will only be deemed moot by a defendant's voluntary compliance with the statute if it the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 WL 7480619, at *4 (S.D.N.Y. Dec. 18, 2020). "More specifically, '[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* citing *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

In *Guglielmo,* this Court dismissed a nearly identical website accessibility lawsuit based on mootness. *See Guglielmo*, 2020 WL 7480619. In *Gugliemo*, the defendant attested that the "[i][d]efendant had invested time and resources in improving the [w]ebsite's accessibility, (ii) [d]efendant has since remedied each of the ADA violations alleged by Plaintiff; and (iii) going forward, [d]efendant intends to commence a significant redesign of the [w]ebsite, of which accessibility will be a 'central aspect'." *Id.* at *6. The Court reasoned that "[m]uch like evidence that has previously been found sufficient by this Court, [d]efendant's attestation offer significantly more than some 'conclusory assertion' of the [w]ebsite's ADA compliance." *Id.* citing *Diaz v. Kroger*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019) (finding that the defendant's affidavit "address[ed] the deficiencies that the courts have identified in defense showings made in support of mootness arguments."). The Court pointed out that the defendant detailed its audit process, provided quantified examples of its audit findings, observed "very few" instances of the access barriers alleged by *Guglielmo* were actually identified, and attested that its employees resolved each of the identified issues. *Id.* Further, "[a]nd while other courts in this District have found that the fact that a defendant 'may be in the process of updating the accessibility of its website' *Markett v. Five Guys Enterprises LLC*, No. 17 Civ. 788 (KBF), 2017 WL 5054568, at *3 (S.D.N.Y. July 21, 2017) to be insufficient to demonstrate mootness, the . . . [d]eclaration's summary of [d]efendant's achievements *to date* does meet 'the stringent showing required by the Supreme Court's mootness precedent" *Diaz*, 2019 WL 2357531, at *5. *Id.*

Here, the Complaint fails to allege any specific date that Plaintiff purportedly visited the Website. Yet, Plaintiff alleges that he "attempted to access the Website from this District" during some unspecified period but Pro-Source "fail[ed] to build its Website in a manner that is compatible with screen reader programs[.]". (Ex. A, ¶23). Plaintiff further alleges that Pro-Source

engaged in intentional discrimination against Plaintiff "by constructing and maintaining a website that is inaccessible to individuals with visual impairments, and failing to take remediation action to remedy this discriminatory conduct." (*Id.* at ¶67).

However, Pro-Source has made significant efforts to comply with the WCAG standards to make and keep their Website accessible to the visually impaired. (Ex. B, ¶¶5-15). Indeed, Pro-Source studied the Complaint and the areas of concern alleged. (Ex. B, ¶¶6-7). The Website has undergone updates, and since the updates have been completed the alleged deficiencies claimed by Plaintiff in his Complaint no longer exist. (*Id.* at ¶¶4-15). Further, Pro-Source is unaware of any further accessibility issues on its Website like those alleged by Plaintiff. Because all allegations identified by Plaintiff have been addressed, there is no "live case or controversy," and this case should be dismissed for lack of subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As a result of Pro-Source's remediation, this case is moot and the Court therefore lacks subject matter jurisdiction and must dismiss Plaintiff's Complaint.

Pro-Source has stated that "[p]rior to the inception of this lawsuit, Pro-Source had undertaken steps to comply with the [WCAG]." (Ex. B, ¶5). Further, Pro-Source "is committed to continuing to keep its Website up to date and compliant with all applicable standards to make the Website as accessible to all as possible." (Ex. B, ¶14). Given Pro-Source's past and future commitments to accessibility, the claims in this case are not "capable of repetition, yet evading review." *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001). Pro-Source has demonstrated its commitment to making its Website accessible. (Ex. B, ¶15). Indeed, Pro-Source has assessed the accessibility of the Website and ensured that changes were made to the Website based on the specific allegations made in the Complaint related to the accessibility of its Website. (Ex. B, ¶7). Pro-Source also includes on its Website an accessibility statement urging consumers to contact

8

Pro-Source should they have any difficulty using or accessing any element of the Website. (Ex. B, ¶16; see also Exhibit 1 to Ex. B). These considerable efforts should allay concern about Pro-Source commitment to working on accessibility issues, and clarify that there is no reasonable expectation that Plaintiff will be able to raise his claims again. *Van Wie*, 267 F.3d at 114. Moreover, there is no reasonable expectation that the alleged violation will recur as Pro-Source "does not intend to let its Website fall behind the current standards and will continue to keep the Website up to date with any new standards because it does not wish to be involved in any further, unnecessary litigation and because of its commitment to being accessible to as many of its patrons, and as much of the public, as possible." (Ex. B, ¶15). Pro-Source's remediation and commitment to keep the Website up to date is significant as it comports with this Court's prior dismissals of website accessibility complaints when a company defendant remediated the alleged barriers the plaintiff claimed impaired his use and enjoyment of the company's website. *See Diaz*, 2019 WL 2357531, *5:

> "[T]o review, Plaintiff identified several barriers to his use and enjoyment of the Website. Defendant removed those barriers, brought the Website in compliance with Plaintiff's preferred WCAG 2.0 standard, and commits to monitoring technological developments in the future to ensure that visually-impaired individuals have equal access to the Website. On this record, Defendant has met the stringent showing required by the Supreme Court's mootness precedents. The Court accordingly lacks subject matter jurisdiction to consider Plaintiff's claims."

Indeed, the instant matter is akin to *Diaz* and *Guglielmo*. Mr. Chinery's declaration establishes (1) that Pro-Source is deeply committed to accessibility regarding its Website, (2) has resolved the issues it could identify that relate to Plaintiff's allegations, and (3) has made further commitments to ensuring the accessibility of the Website and compliance with the WCAG. (Ex. B, ¶¶6, 7, 12, 13, 15, 16, 18).

That Pro-Source removed all alleged barriers and is committed to keeping the Website up to date with accessibility standards is supported through the declarations of Robert Chinery, Pro-Source's Website Designer, and Mr. Kingett. (Ex. B, ¶¶ 4-15, Ex. C, ¶¶7-8, Ex. 1 to Ex. C).   Mr. Kingett, who is a totally blind screen reader user, stated in his declaration that "[e]very part of the Website I reviewed with my screen reader was accessible", and "[t]he website . . .is accessible and a visually impaired individual should be able to use the website if they actually know how to use a screen reader." (Ex. C, ¶¶ 5, 9). The Court can watch Mr. Kingett go through the Website with his screen reader. (See Ex. 1 to Ex. C).  "A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action."  *Yusim v. United States Department of Housing and Urban Development*, 409 F.Supp.3d 125, 128 (E.D.N.Y. Mar. 28, 2018).  "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). To that end, Pro-Source has shown that the Website is accessible to screen readers, the case is moot and the court lacks subject matter jurisdiction over the matter.

## B. Plaintiff's Request For Nominal Damages Does Not Defeat Defendant's Mootness Argument

Nominal damages are not available under Title III of the ADA, and thus, does not circumvent the mootness argument set forth by Defendant.  "A private individual may only obtain injunctive relief for violations of a right granted under Title III; **he cannot recover damages.**" *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 86 (S.D.N.Y. April 7, 2004) (emphasis added) citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402 (1968); *see also Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x. 88, 90 (2d Cir. 2011) (Title III of the ADA "allows only for injunctive relief").

This interpretation remains uninterrupted in other jurisdictions across the country. *See* "Title III defendants cannot be liable for money damages." *Bowers v. National Collegiate Athletic Ass'n*, 346 F.3d 402,433 (3d Cir. 2003); 42 U.S.C.A. §12188(a) (West); *Anderson v. Macy's Inc*., 943 F.Supp.2d 531, 538 (W.D. Pa. 2013) (Further private plaintiffs are specifically barred from obtaining any monetary damages.); *see also Reviello v. Phila. Fed. Credit Union,* No. 12–508, 2012 WL 2196320, at *4 (E.D.Pa. June 14, 2012) ("Private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available."); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III."); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006) (holding plaintiff's Title III claim moot because "Title III provides only injunctive relief..."); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) ("injunctive relief...is the only form of relief available to plaintiffs suing under Title III of the ADA."); *Goodwin v. C.N.J., Inc*., 436 F.3d 44, 50 (1st Cir. 2006) ("This court has recognized that section 12188(a)(1) does not contemplate an award of money damages in suits brought by private parties."); *see also Smith v. Wal-Mart Stores, Inc.,* 167 F.3d 286, 293 (6th Cir.1999); *Jairath v. Dyer,* 154 F.3d 1280, 1283 n. 7 (11th Cir.1998); *Am. Bus Ass'n v. Slater,* 231 F.3d 1, 5 (D.C.Cir.2000).

Additionally, because the statute is unambiguous, there can be no other interpretations of the remedies Title III of the ADA provides. 42 U.S.C.A. § 12188 (West).  Indeed, the only remedies available are those "that Congress enacted into law." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979).  Courts are tasked with interpreting "the statute Congress has passed to determine whether it displays an intent to create…a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444

U.S. 11, 15 (1979)).  Title III and case precedent are unequivocal; Plaintiff may not request nominal damages.

In *Hillesheim v. Holiday Stationstores, Inc*., the Court of Appeals for the Eighth Circuit affirmed the district court's grant of summary judgment for the defendant after they remedied the Title III violations within two months after the complaint was filed. *Hillesheim v. Holiday Stationstores*, Inc., 953 F.3d 1059, 1060-1062 (8th Cir. 2020). An expert for the plaintiff inspected the remedies and found them to be sufficient. *Id*. at 1061. The district court granted summary judgement and ruled that "the post-suit alterations mooted [plaintiff's] claims." *Id*.  The court also ruled that "nominal damages are not available under Title III of the ADA, and that requesting them does not affect mootness." *Id*. at 1062.  Accordingly, Plaintiff is not entitled to nominal damages, Plaintiff's Complaint is moot, and this Motion is due to be granted.

### C.   Plaintiff Has No Actual Knowledge Of A Barrier To Access Goods Or Services From Defendant Since He Never Contacted Defendant Via Telephone or Email

First, Pro-Source asserts that based on the language of ADA, any website accessibility lawsuit filed should be dismissed if a company defendant has an available customer service line that a plaintiff does not even attempt to utilize.  Without calling, a plaintiff knows nothing about the range of auxiliary aids and services that a defendant offers to the visually impaired or if they can actually order product or learn about the allege products they are seeking.  *See* 28 CFR § 36.303(c)(1)(ii); *see also* 28 C.F.R. Pt. 36, App'x C ("the auxiliary aid requirement is a flexible one.  A public accommodation can choose among various alternatives as long as the result is effective communication.  For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu.  Similarly, a clothing boutique would not be required to have

Braille price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad.").  Moreover, there is nothing in the language of the ADA mandating that a company must have an accessible website.  *See West v. Moe's Franchisor, LLC*, 2015WL 8484567, at *3 (S.D.N.Y. Dec. 9, 2015) ("Nothing in the ADA or its implementing regulations supports plaintiff's argument that [the retailer defendant] must alter its [drink] machines in a way that allows blind individuals to retrieve beverages without assistance . . . .  Plaintiffs may be correct that technological additions to the [drink] machines are both feasible and preferable.  However, under the ADA effective assistance from Moe's employees acting a 'qualified readers' is sufficient.")

As shown through the video of Mr. Kingett's review of the subject Website, Plaintiff could have contacted Defendant through multiple resources on the Website.  Specifically, Plaintiff could have used Defendant's telephone number or dedicated customer service email address, found on its "Contact Us" page and Accessibility Statement page, to contact Defendant regarding any accessibility barriers he purportedly encountered on the Website that allegedly inhibited him from purchasing a product from Defendant.  (Ex. C, ¶6, *see also* Ex. 1 to Ex. C).  Indeed, Defendant's Accessibility Statement is entirely devoted to providing Website users with information regarding Pro-Source's general website accessibility and accommodation policies along with alternative contact information should a Website user run into any issues whatsoever[2].

---

[2] A copy of the Website's Accessibility Statement is attached to Mr. Chinery's declaration as Exhibit A, and can also be accessed at https://www.prosource.net/pages/accessibility-statement (last accessed June 7, 2022).

Furthermore, Defendant's customer service telephone number is available on the Website. (Ex. B, ¶¶16-17; *see also* Ex. 1 to Ex. C). If a customer calls Pro-Source's customer service line located on the Website, they can work directly with someone from Pro-Source customer service to place an order, learn information related to Pro-Source's products, and much more. (Ex. B, ¶18). If Plaintiff actually tried to call Pro-Source, he could have been helped by a Pro-Source employee. There are no allegations in the Complaint that Plaintiff ever attempted to call Pro-Source. If Plaintiff really wanted to order product from Pro-Source it does not make sense for him not to call Defendant if he was truly having accessibility issues on the Website.

It is clear from the review of the Website that Mr. Kingett (who is a totally blind screen reader user) could locate Pro-Source's telephone number on the Website multiple times. (*See* Ex. 1 to Ex. C).

In *Castillo v. John Gore Organization, Inc.*, Judge Allyne R. Ross granted defendant's Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of standing under the ADA, in part, because Castillo did not have actual knowledge of a barrier to access of defendant's theater. *Castillo v. John Gore Organization, Inc.* 2019 WL 6033088, *5 (E.D.N.Y. Nov. 14, 2019). In *Castillo*, the crux of plaintiff's complaint was that she (a diabetic) was deterred from purchasing a ticket to attend a show at defendant's theater after seeing a policy on defendant's website prohibiting patrons from bringing in outside food. *Id.* at *2. However, defendant's homepage also contained an accessibility policy that stated "[t]he Charles Playhouse is accessible to all patrons. Guests with accessibility questions or who require additional assistance may email the Playhouse directly … or call the house manager …." *Id.* The Court stated that the only injury that Castillo could have suffered is deterrence from visiting the theater since she alleged

that she did not purchase a ticket due to defendant's policy of prohibiting outside food.  *Id.* at *5.  The Court stated, "to have suffered an injury under the deterrence theory, the plaintiff must have had actual knowledge of a barrier to access."  *Id.* at *5.  However, "[t]he plaintiff makes no claim that she contacted the theater, as the defendant's website invited her to do, and was denied permission to bring outside food.  Accordingly, she could not have had actual knowledge that the defendant's outside-food prohibition would bar her access to the theater, as defendant's website made it abundantly clear that there was at least a possibility of accommodation."  *Id.* at *5.  Despite defendant having provided methods of contact for such inquiries, Castillo never called or emailed the theater to ask whether there were any exceptions to the no outside food or drink policy.  *Id.*

The Complaint is devoid of any allegations that Plaintiff attempted to contact Defendant via its customer service number or email address which are available via Pro-Source's Accessibility Statement.  Indeed, Pro-Source's Accessibility Statement states:

> "If you have difficulty using or accessing any element of this website, please feel free to call us at 1-800-310-1555 or email us at webmaster@prosource.net and we will work with you to provide the information, item, or transaction you seek through a communication method that is accessible for you consistent with applicable law."
> (Ex. B, ¶ 17).

Nor does Plaintiff allege in the Complaint that the "Contact Us" page or Accessibility Statement on the Website and its contents therein were inaccessible with his screen reader at any time.  Indeed, the undisputed evidence shows that Defendant's Accessibility statement is wholly accessible with a screen reader, and the Court can view Mr. Kingett's software reading the accessibility statement aloud and verbatim.  (*See* Ex. 1 to Ex. C) (*see contra*, *Gorecki v. Dave & Buster's, Inc.*, 2017 WL 6371367, at *5 (C.D. Cal. Oct. 10, 2017) (Denying

defendant's concurrent motion to dismiss and motion for summary judgment on the basis that plaintiff raised a genuine dispute as to whether defendant's "accessibility banner" was accessible to screen reader users.)).   There is no dispute that the alternative contact information located on the Website is fully accessible with screen reader software. Accordingly, Plaintiff lacks standing under the ADA because he could not have had actual knowledge of a barrier to access Defendant's goods as he did not even try to call the company or alleges he tried to call the company.

### D.   Plaintiff Cannot Show An "Injury In Fact" As He Did Not Plead A Specific Product He Was Interested In Purchasing.

To establish standing, Plaintiff must show he is suffering or has suffered an "injury-in-fact," that is a "concrete, particularized, and actual or imminent . . ." invasion of his personal interests, fairly traceable to the challenged action, and which would be resolved by a judgment in his favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   An "imminent" injury must be "certainly impending" to constitute an injury in fact; allegations of a possible future injury are insufficient.   *See Clapper v. Amnesty Intern, USA*, 568 U.S. 398, 409 (2013).   It is also important to note that a party may not establish an "injury-in-fact" by simply alleging a violation of a statute "divorced from any concrete harm;" the party must demonstrate an actual, concrete injury. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547-49 (2016).

Plaintiff must allege that Pro-Source violated a law, that he suffered a concrete harm as a result of Pro-Source's alleged violation of the law, and that a ruling in his favor would redress this alleged harm.   Plaintiff has not done so, as he has not described any specific item he intends to purchase from the Website.   Rather, Plaintiff casually claims that he "was injured when he attempted to access Defendant's Website from this District but encountered barriers that denied his full access to Defendant's online goods, content, and services."   (Ex. A, ¶16).

Similarly, Plaintiff also vaguely claims he visited the website but was "denied the benefit of, much of the content and services he wishes to access in Defendant's online store."  (Ex. A, ¶23).  Indeed, Plaintiff has not properly pled an injury in fact with such sufficient clarity of <u>any</u> product that he was prevented from purchasing when he visited the website on some unspecified date.  Further, Plaintiff has also not articulated the product (or any product) he desires to purchase in his wish to return to the Website at some future date.  As recently as August 20, 2021, Judge Andrew L. Carter Jr. of the United States District Court for the Southern District of New York held in an analogous website accessibility lawsuit that the plaintiff lacked standing to bring his ADA claim because "[i]t is not sufficient to claim that [Jaquez] suffered an injury in fact by casually going to the website with the intent of browsing and potentially purchasing a product without identifying the product that he was prevented from purchasing."  *See Jaquez v. Aqua Carpatica USA, Inc.* 20 CV 8487 (ALC), 2021 WL 3727094, at *6 (S.D.N.Y. Aug. 20, 2021); *see also id.* citing *Guglielmo*, at 2020 WL 7480619, at *11 (Dismissing the plaintiff's complaint that he encountered barriers while attempting to access the defendant's website because he failed to identify the goods he intended to purchase on any of his visits to the website).  Likewise, in the instant matter, Plaintiff's complaint is devoid of any allegations specifying what product (if any) he was prevented from purchasing.

Moreover, Plaintiff has separately fails to establish standing in an ADA action because he has failed to allege an intent to return to the Website in the near future.  *See Guglielmo*, 2020 WL 7480619, at *5 (the Court held that plaintiff offered only "vague and conclusory allegations of intent to return, and fails to establish a likelihood of return" when plaintiff pled that he was deterred "on a regular basis" from equal access to defendant's website).  Here, Plaintiff explicitly pleads that "[t]hese access, and others, deny Plaintiff fully and equal access

to all the services the Website offers, and now deter him from attempting to use the Website. Still, Plaintiff would like to, and intends to, attempt to access the Website in the future to research the products and services the Website offers[.]" (Ex. A, ¶26) (emphasis added). The circumstances in the instant matter are the same as *Aqua Carpatica* and *Guglielmo*. Because Plaintiff has not pled an injury with sufficient clarity, and because he has not alleged any future concrete plan to revisit the website, Plaintiff lacks standing to bring a claim under the ADA and his Complaint should be dismissed accordingly.

## V.     CONCLUSION

WHEREFORE, the Defendant, Pro-Source Performance Products, Inc., respectfully requests that this Court enter an Order granting Defendant's motion and dismissing Plaintiff, Lamar Brown's Complaint with prejudice, and providing any further relief deemed appropriate.

Respectfully submitted,

/s/ Ryan T. Benson
Ryan T. Benson (Admitted *Pro Hac Vice*)
Attorney for Defendant, Pro-Source Performance Products, Inc.

Ryan T. Benson (ARDC No. 6312338)
O'HAGAN MEYER, LLC
One East Wacker Drive
Suite 3400
Chicago, IL 60601
T: 312-422-6100
F: 312-422-6110
rbenson@ohaganmeyer.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 2, 2022, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system:

Gary F. Lynch
Nicholas A. Colella
James M. LaMarca
**LYNCH CARPENTER LLP**
1133 Penn Avenue Floor 5
Pittsburgh, PA 15222
(412) 322-9243
gary@lcllp.com
nickc@lcllp.com
james@lcllp.com
R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
(724) 730-1753
*Counsel for Plaintiff*

/s/ Ryan T. Benson
Ryan T. Benson, ARDC No. 6312338
O'Hagan Meyer LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
312.422.6100 –T
312.422.6110 – F
rbenson@ohaganmeyer.com

19